## C. M. Davison v. The State.

1. THEFT.— The term "property" in the statutory definition of theft includes money, bank-bills, and all articles commonly known as personal property; and an indictment which charged the theft of "four one-half dollar silver pieces, United States silver coin, of the

denomination and value of fifty cents each" sufficiently described money alleged to have been stolen.

2. SAME — SWINDLING.— Little if any difference exists between swindling as defined in article 790 of the Penal Code and that species of theft in which, according to article 727, the taking, though originally lawful, was obtained by false pretext or with the felonious intents characteristic of the offense; and the same punishment is prescribed for both offenses.

3. SAME.— Under an ordinary indictment for theft a conviction may, upon the proper proof, be had for swindling. See the opinion *in extenso* on the subject.

4. EVIDENCE.— See evidence which, it is held, would sustain a conviction either for theft or swindling.

5. SAME.— In a trial for theft of the money of one W., the latter testified that the defendant, under a false name and by falsely representing himself as authorized to solicit and receive subscriptions for certain magazines, obtained money of the witness, who never received the magazines. The State was allowed to elicit from two other witnesses the fact that the defendant obtained money from them about the same time and in the same manner, with the like result. *Held,* that this evidence was admissible to establish the identity and the fraudulent intent of the defendant.

APPEAL from the District Court of Erath. Tried below before the Hon. T. L. NUGENT.

The case is fully disclosed in the opinion. The first head-note gives the language in which the indictment described the money. A fine of $100 and three months' imprisonment in the county jail were assessed as the punishment.

No brief for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WHITE, P. J. As used in the definition of theft, the term "property" includes money, bank-bills, etc. Penal Code, art. 732. And under a recent provision of our statute, it is declared that "in indictments for theft or embezzlement of any coin or paper current as money, or of any checks, bills of exchange, or other such security,

it shall be sufficient to describe the property in general terms, as 'money,' 'checks,' 'bills of exchange,' or other evidence of debt, of or about a certain amount." Acts 17th Legislature, p. 61, sec. 9. Tested by these provisions, the indictment in this case sufficiently describes the money stolen.

The indictment was one in the ordinary form for theft. The conviction was for swindling as defined in art. 790 of the Penal Code, which punishes the unlawful acquisition of property, money, etc., where acquired by means of some false or deceitful pretense or device, or fraudulent representation, with intent to appropriate the same to the use of the party so acquiring. There is really but little if any difference between swindling as defined in this statute and that character of theft provided for in art. 727 of the Penal Code, to the effect that "if the taking though originally lawful was obtained by any false pretext, or with any intent to deprive the owner of the value thereof and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete." Furthermore, the analogy between the two offenses is so close that the punishment affixed to the one is expressly prescribed for the other. Penal Code, art. 796.

It was formerly held that a conviction for theft by means of false pretenses could not be had under a general indictment for theft (*Marshall* v. *State*, 31 Texas, 471); but this doctrine has been overruled. *Smith* v. *State*, 35 Texas, 738; *Maddox* v. *State*, 41 Texas, 205; *Quitzow* v. *State*, 1 Texas Ct. App. 65. If the conviction could be had, under a general charge, for theft, where the property was acquired by means of false pretenses, we see no reason why a conviction cannot be had for swindling under the same character of indictment; and more particularly so when our statute expressly declares that "theft includes swindling, embezzlement, and

all unlawful acquisitions of personal property punishable by the Penal Code." Code Crim. Proc. art. 714, subdiv. 6.

The facts as testified by Whitacre, the first witness for the State and the victim of the swindle, would make out a case under either or both of the articles above referred to. He says: "I live in Erath county, and on or about the 23d of January, 1880, was at work in my blacksmith shop, which was near my house. There were several men present on said occasion, and while there defendant came in and said he 'was canvassing for some magazines which were the best literature that had been written since Cain and Abel had the measles.' This last remark attracted my attention as a very peculiar expression. I said very little to him at the shop. Defendant said his name was Davis. The other men soon left the shop. It was rather late in the evening. Defendant asked me to let him stay all night with me; or I invited him to stay; I do not remember which. At any rate he went with me to the house and stayed all night. Defendant said he was agent for 'The People's Illustrated Journal' and 'Home and Fireside Magazine,' and also for some chromo pictures, and said he was agent of said magazines for the purpose of getting subscribers. I looked over his papers and selected two, which he said he would send me one year for two dollars. I paid him two dollars in silver, in four one half-dollar silver pieces, United States silver coin, of the denomination and value of fifty cents each. He gave me a receipt for the money, and specified the periodicals in the receipt that he was to send me, . . . which read as follows: 'Received of W. R. Whitacre the sum of ($2.00) two dollars, subscription to two periodicals,— Peo. Ill. Journal and Home and Fireside Magazine. Jan'y 23d, '80.  C. M. Davis, agent.'

"Defendant left my house next morning, and I did not see him any more until the next summer, about August, 1880, I was in Stephenville at a Greenback meeting held in

the court-house, and recognized the defendant while he was addressing the meeting.  After adjournment I accosted him on the street and called him 'Davis.' He said his name was not 'Davis' but 'Davison,' and pretended not to know me.  He denied that his name was Davis several times, and until I told him that he need not deny it any longer, because I had his receipt signed in the name of Davis.  He then pretended to remember me and said 'oh, yes, you are the man I met in the blacksmith shop.' I asked him what about those papers I had paid him for in January; to which he replied that he had forwarded the money on to the companies, and that he supposed I had been getting them; that he had bought drafts of J. D. Berry, a banker in Stephenville, and sent the money off, and that he could convince me of it.   We walked over to the office of J. D. Berry, dealer in exchange, and called for some strips of the drafts that he said he had sent off. He found nothing that satisfied me that he had sent the money  .  .  .  I never received the papers or either of them, or the chromos which were to accompany the papers.   I relied on the representations of the defendant that he was the agent for the papers, and was deceived by such representations; and it was in consequence of such deception that I parted with my money."

Two other witnesses, Clark and Allison, appeared and testified that they had also been victimized similarly and about the same time, and each produced a like receipt to Whitacre's, executed by C. M. Davis, whom they also recognized in the person of defendant.   Of course defendant objected to the testimony of these other two witnesses, because irrelevant and because relating to other and different transactions to the one for which he was on trial. Very properly, however, the court overruled said objections, the evidence being admissible both to prove identity and show the motive and intent of defendant, *Gilbraith* v. *State*, 41 Texas, 567.

Now as the representative of the best specimens of literature since the days of Cain and Abel, and also as a leading orator of a political party, and competent to grapple with the great questions of national finance, or explain how money could legally be made more plentiful, defendant should have been strictly scrupulous and particular as to his own financial transactions, and he would then doubtless have been saved the one hundred dollars which the jury by way of fine have affixed as part of his punishment in this case, to say nothing of the sufferings so active and public a spirit as he must endure whilst cut off from the world of letters and politics, and while he languishes three long months in the county jail of Erath county. We see no occasion to interfere with his merited punishment, and the judgment is affirmed.

*Affirmed.*